UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:04CV-47-H

WEST AMERICAN INSURANCE COMPANY                                                  PLAINTIFF

V.

MARGIE A. EMBRY
a/k/a JUDITH ANN EMBRY                                                                       DEFENDANT

**MEMORANDUM OPINION**

West American Insurance Company ("West American") requests a declaratory judgment that it has no duty to defend an underlying charge that negligent supervision by its insured Margie Embry ("Defendant or Embry") caused or allowed sexual molestation to occur. Both parties have moved for summary judgment. After thorough consideration, the Court predicts that under Kentucky law West American would have no duty to defend the underlying action.

**I.**

In May 2003, James Hall filed a civil action against Margie Embry and other defendants in Jefferson Circuit Court. The Complaint alleged that Embry breached a duty of care she owed to Hall, a minor living in her home for a few weeks during the summer of 1996, by failing to protect him from sexual molestation by Embry's adult son Timothy Embry. The complaint does not allege any intentional acts of sexual molestation by Margie Embry.

At the time of the events of the underlying negligent supervision claim, West American provided homeowner's insurance coverage for Margie Embry. The relevant policy provided for, among other things, personal liability coverage. Initially, West American provided a defense to

Embry on the underlying personal liability claim pursuant to a reservation of rights letter. Upon further review West American advised Embry that it would deny coverage based upon certain exclusions in the policy and would cease to defend her in the Jefferson Circuit action. Notwithstanding the denial of coverage, West American has continued to provide a defense to Embry in the underlying action.

Only a few portions of the policy are relevant to the Court's review. "Coverage E" of the policy requires West American to defend and indemnify when

> a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies . . . .

An "occurrence" is defined as

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>
> a.   "Bodily injury" . . . .

The policy also contains the following pertinent exclusions:

> 1.   Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":
>
> a.   Which is expected or intended by the "insured";
>
> . . .
>
> k.   Arising out of sexual molestation, corporal punishment or physical or mental abuse . . . .

Based on these provisions, West American offers two reasons why it has no duty to defend or indemnify Embry: first, sexual molestation is not an "occurrence"; second, even if it were, the policy's broad exclusion for any claim arising out of sexual molestation precludes coverage for a claim of negligent supervision based on sexual molestation. The Court will address each of

2

these in turn.

## II.

A recent Sixth Circuit case applying Kentucky law appears to foreclose West American's first argument.  In *Westfield Ins. Co. v. Tech Dry, Inc.*, an insurer sought a declaratory judgment that it had no duty to defend or indemnify in an underlying action against one of its insureds.  336 F.3d 503 (6th Cir. 2003).  In that underlying action the insured was sued for negligent hiring and retention of an employee who murdered a woman.  The insured's insurance policy was substantially similar to the one here, providing for liability coverage for bodily injury caused by an "occurrence" – defined, like here, as an "accident."  As here, the policy excluded coverage for acts intended or expected by the insured.  The insurer contended that the negligent hiring of someone who commits intentional acts cannot constitute an accident.  The Sixth Circuit noted that other courts had addressed this question, arriving at different conclusions.  In describing the split, the Court said:

> When courts deny coverage in negligent hiring cases, they arguably transform an employer's negligent acts into intentional acts, dissolving the distinction between negligent and intentional conduct. To avoid this problem, we will look to the actions of the insured and not the perpetrator of the intentional act in determining whether there is coverage of [insured] for its alleged negligent hiring and retention of [its employee].

*Id.* at 510 (citations and internal quotations omitted).

The Sixth Circuit sought to predict how Kentucky courts would treat this issue.  Under Kentucky law, it noted, the term "occurrence" is construed broadly in favor of extending coverage to the insured.  *Id.* (citation and internal quotations omitted).  When a policy contains an exclusion for intentional acts by the insured, coverage must be provided "as long as the injury was not actually and subjectively intended" by the insured.  *Id.* (citation and internal quotations

3

omitted). "An insured cannot deny coverage on grounds that conduct was intentional rather than accidental if the insured did not possess the requisite intent to do injury." *Id.* (citation omitted). Since a claim of negligent hiring does not allege intentional injury by the insured, it is not excluded under the policy. *Id.*

The same reasoning would seem to apply here, where the underlying action seeks to hold Defendant liable for her negligence in failing to discover and remedy a problem. It alleges no intentional act on the part of Defendant. Like negligent hiring of an employee, negligent supervision of a child would constitute an "occurrence" within the language of the policy here, thus requiring West American to defend and indemnify in the underlying action.

### III.

West American's second argument has more merit. Unlike the insurer in *Westfield*, West American here has the benefit of an additional, specific exclusion for all claims of bodily injury "[a]rising out of sexual molestation." Various courts have reached different conclusions while interpreting similar provisions in the context of a negligent supervision or negligent hiring claim.

One view holds that such a provision does not bar coverage for a claim of negligent hiring or supervision because such a claim "arises" not from sexual molestation, but from an insured's negligence. In *St. Paul Fire & Marine Ins. Co. v. Schrum*, the Eighth Circuit agreed with the insureds that a sexual molestation exclusion was not applicable to a negligent supervision claim. 149 F.3d 878 (8th Cir. 1998). The claim of negligent supervision focused on whether the homeowners were "negligent in failing to properly supervise and control the [children], thereby affording [the molester] the opportunity to harm them." *Id.* at 881. The court read the allegation of negligent supervision as a "separate and non-excluded cause" of the

4

children's injuries, apart from the molestation. *Id.* The court concluded that the conduct of the intentional actor was "merely incidental" to the negligence claim against the homeowner. *Id.*

Other courts have interpreted the phrase "arising out of" more broadly to exclude claims having some causal connection to sexual molestation:

> In sum, for insurance-coverage purposes, if the alleged sexual molestation is a cause of the claimed bodily injuries, then the existence of other alleged negligence claims and proximate causes is of no moment--the bodily injuries alleged are causally connected to or "arise out of" the sexual molestation, and are thereby excluded from coverage.

*American Commerce Ins. Co. v. Porto*, 811 A.2d 1185, 1196 (R.I. 2002). Stated another way, "The plain language of the policies provides no coverage for injury in the form of sexual molestation regardless of whether the injury was caused by an insured or the injury could have been prevented by an insured." *Metropolitan Property and Cas. Ins. Co. and Affiliates v. Miller*, 589 N.W.2d 297, 300 (Minn. 1999); *see also Allstate Ins. Co. v. Bates*, 185 F.Supp.2d 607, 612-13 (E.D. N.C. 2000) (explicitly rejecting the Eighth Circuit's approach in *Schrum* and stating "The policy unambiguously bars coverage for injuries arising out of sexual molestation, and there is no question that the bodily injury in this case arose out of sexual molestation.").

This Court must decide which of these approaches Kentucky courts would follow. *Westfield Ins. Co.*, 336 F.3d at 508.

A.

The Court believes that Kentucky would likely adopt the latter approach. Kentucky courts will enforce policy exclusion language that is clear. *Kemper Nat. Ins. Companies v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002) (citation omitted). Though Kentucky courts do strictly construe exclusionary provisions against the insurer, they would not

do so in a way to "overcome plain, clear language resulting in a strained or forced construction." *Id.* at 873-74 (citation and internal quotations omitted). Here, the policy provisions evidence the type of specific intent to exclude an entire category of claims that Kentucky courts would honor. The West American policy contains an exclusion for intentional acts by the insured as well as an even more specific additional exclusion for all claims arising out of sexual molestation. Under Defendant's view, the specific "sexual molestation" exclusion would add nothing to the policy interpretation. The Court believes that the additional exclusion does add meaning. It is not merely illustrative. Taken together, these provisions evidence a clear and specific intent to exclude all claims arising from sexual molestation, even those based on some theory other than the insured's intentional conduct – a theory such as negligence.

Given the evidence of such clear and specific intent, Kentucky courts would apply a broad meaning to the phrase "arising out of" in insurance contracts. Kentucky courts would feel comfortable requiring only some causal relation or connection between the claim and the underlying event, as suggested by a well-established treatise:

> The phrase "arising out of" is frequently given a broader meaning than proximate cause. The phrase is considered to mean "flowing from" or "having its origin in," indicating that there only need be "a" causal connection, rather than a proximate causal connection. The same interpretation has been given to the term "resulting from."

7 *Couch on Insurance* 3d § 101:54 (1997). Kentucky cases support this view.

In *Eyler v. Nationwide Mut. Fire Ins. Co.*, the Kentucky Supreme Court interpreted an exclusion in a homeowner's policy for occurrences "arising out of [other owned premises]." 824 S.W.2d 855 (Ky. 1992). As written, that phrase meant that the policy would exclude occurrences "causally related" to some condition or defect in the premises. *Id.* at 857. It would

6

not exclude all injuries simply occurring on the premises. The injury at issue occurred when a man rolled many tires down a hill in a manner that injured someone. The court held that that particular injury did not arise from any condition or defect in the premises. *Id.* at 858.

In *Kentucky Farm Bureau Mut'l Ins. Co. v. Hall*, the Kentucky Court of Appeals interpreted the language "arising out of maintenance or use of a motor vehicle" from a coverage provision in Kentucky's Motor Vehicle Reparations Act. 807 S.W.2d 954 (Ky. App. 1991). Kentucky courts had previously interpreted that phrase as requiring a "causal connection." *Id.* at 955. The court in *Hall* went on to define the nature of that causal connection more specifically: "Although the required causal connection between the injury and the use of the vehicle should be more than incidental, the requirement is satisfied if the injury is reasonably identifiable with the normal use or maintenance of a vehicle and is reasonably foreseeable." *Id.* at 956. The court found that the injury at issue there – getting struck in the eye while driving by an object propelled from a lawn mower – arose out of use of a motor vehicle. It is apparent that both *Eyler* and *Hall* applied a broad, though slightly different, meaning to the phrase "arising out of."

Finally, as applied here, such an interpretation is consistent with an established public policy of Kentucky. Kentucky has a public policy against providing coverage for insureds who commit sexual molestation. *Goldsmith v. Physicians Ins. Co. of Ohio*, 890 S.W.2d 644, 645-647 (Ky. App. 1995). Logically, Kentucky courts might extend this policy to those who fail to prevent sexual molestation through negligence. Certainly, Kentucky would not promote a policy that prohibits or discourages an insurer's valid choice to exclude coverage of claims involving sexual molestation. West American clearly articulated such a choice by its policy language. In these circumstances, courts should not look for ways to ignore such a valid and reasonable

choice.

B.

The Court does take note of an unpublished split decision from the Kentucky Court of Appeals, *Kentucky School Bds. Ins. Trust v. Bd. of Educ. of Woodford County*, No. 2002-CA-001748-MR, 2003 WL 22520018 (Ky.App. Nov. 7, 2003). That case required the Kentucky Court of Appeals to decide whether a school board's insurance policy covered a claim of negligent hiring of a teacher who sexually molested a student. The policy contained exclusions for, among other things, claims "arising out of bodily injury" and claims "arising out of . . . assault and battery . . . ." *Id.* at *3. The court framed the issue as dependent on how broadly one interprets the phrase "arising out of." If the claim arose out of bodily injury or assault and battery, it was excluded. If it arose out of negligence, it was covered.

The court focused closely on the nature of the allegations in the complaint, rather than the underlying facts. Under Kentucky law, the court noted, an insurer has a duty to defend "any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *Id.* at *7 (quoting *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). The complaint at issue alleged, in pertinent part, negligence. With this in mind, and relying heavily on similar logic from a Pennsylvania case,[1] the court concluded that "when negligence allows a crime to occur, the claim against the negligent party arises from the negligence rather than the criminality." *Id.* at *11. According to the court, since such a claim does not arise from the criminal act, the

---

[1] *Board of Public Educ. of the School Dist. of Pittsburgh v. National Union Fire Ins. Co.*, 709 A.2d 910 (Pa. Super. 1997).

8

exclusion does not apply. While this result is contrary to this Court's foregoing analysis, it is not binding because unpublished decisions may not be cited as precedent by Kentucky courts. Ky. R. Civ. P. 76.28(4)(c). Nevertheless, it cannot be ignored.

The Court concludes that Kentucky's highest court would not apply the majority analysis to our circumstances. In fact, Kentucky courts are more likely to agree with Judge William McAnulty's dissenting opinion. He contended that the majority had ignored the plain language of the policy. *Id.* at *12. (McAnulty, J., dissenting). He pointed out that under the majority's analysis an injured party could turn an otherwise excluded claim into a covered claim by artfully pleading a theory which appears to be covered under the policy. *Id.* This Court agrees with Judge McAnulty: to adopt the reasoning of this unpublished opinion would similarly strain the clear language of the policy at issue here. In our circumstances that is particularly true because the West American policy exclusion refers specifically to claims "arising out of sexual molestation." Such exclusion evidences even clearer intent than the exclusions at issue in *Kentucky School Bds*.

The majority opinion did briefly examine *Eyler v. Nationwide Mut. Fire Ins. Co.* and *Kentucky Farm Bureau Mut'l Ins. Co. v. Hall*, the two cases that this Court discussed earlier in this opinion for their treatment of the phrase "arising out of." Noting that *Eyler* involved an exclusionary provision and *Hall* a coverage provision, the court concluded that "arising out of" requires a stronger causal connection when used in an exclusionary provision than when used in a coverage provision. *Id.* That may or may not be true. The distinction has no effect on the analysis here, since even the ostensibly "narrower" of the two cases, *Eyler*, only requires a "causal relation" between the claimed injury and the excluded event. Undoubtedly, the claimed

9

injury here –"foreseeable harm resulting from [Defendant's] son's sexual molestation"[2]– was "causally related" to any sexual molestation suffered upon the child. Since the claim arose out of sexual molestation, West American has no duty to defend.

The *James Graham Brown* case, relied upon heavily by the Kentucky Court of Appeals, only supports this conclusion. That case states that the duty to defend is broader than the duty to indemnify. 814 S.W.2d at 279. In that case, the Kentucky Supreme Court directed courts to examine the nature of the allegations in a complaint, rather than the underlying facts, so that insurers would be required to provide a defense at the outset for apparently covered claims without delving into the merits of those claims. *Id*. The case does not require insurers to defend claims excluded by their nature. Here, the underlying complaint alleges negligent supervision for failure to prevent sexual molestation. Because by its nature this claim arises out of sexual molestation, it should be excluded under the policy.[3]

---

[2] This is the injury alleged in the underlying complaint by James Hall. (DN 1 Exh. B, at 7).

[3] West American has identified an additional reason why it has no duty to defend: the policy does not cover claims of bodily injury to an "insured," which James Hall was at the time of the underlying events. James was an insured if he was a resident of Defendant's household, under 21 years of age, and in the care of Defendant.

Although Defendant has not placed into the record facts to help decide this issue, on West American's facts James fits the definition of "insured." In the summer of 1996 James was eleven years old and living in Defendant's home under her care for five to seven weeks. As such, he was not only under 21 and in the care of Defendant, but a resident of her home. *Perry v. Motorists Mut. Ins. Co.*, 860 S.W.2d 762, 764 (Ky. 1993) (Kentucky defines residence as a "factual place of abode or living in a particular locality"; a person may have more than one residence at a time) (citation omitted); *United States v. Namey*, 364 F.3d 843, 845 (6th Cir. 2004) (residence "requires both physical presence and an intention to remain some indefinite period of time, but not necessarily permanently") (citation omitted).

The Court does not conclusively decide this issue since it has no facts on record from Defendant. But if West American's facts are true, then James Hall was an "insured" under the policy at the time of his bodily injury. As such, West American would have no duty to defend the underlying suit.


The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record

Case 3:04-cv-00047-JGH   Document 15   Filed 04/26/05   Page 11 of 11 PageID #: 340